# IN THE COURT OF APPEALS OF IOWA

No. 24-1009
Filed October 16, 2024

**IN THE INTEREST OF M.T.,**
**Minor Child,**

**K.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell, Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Jamie L. Schroeder of Nelson & Toenjes, PLLC, Shell Rock, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

A mother appeals the termination of her parental rights to her child, M.T.[1] She contends the State failed to prove a statutory ground for termination and a six-month extension should have been granted. Upon our de novo review, we affirm termination of the mother's parental rights.

### I.    Background Facts and Proceedings.

The Iowa Department of Health and Human Services first became involved with M.T. in May 2023 after his umbilical cord tested positive for amphetamine, methamphetamine, and marijuana at birth. The mother admitted to using methamphetamine during pregnancy and also tested positive for amphetamine and marijuana. When M.T. was discharged from the hospital, the department placed him with fictive kin pursuant to a stipulated safety plan. He was officially removed and adjudicated a Child in Need of Assistance in August 2023.

The mother has an extensive history with the department involving several children, and the department's main concern has consistently been the mother's now-ten-year history of methamphetamine use. Her rights to her two oldest children, Z.B. and L.B., were terminated in 2019 based on the mother's addiction and incarceration. After she was released, the department was involved again with her third child, O.M., while she was pregnant with M.T. While the mother initially complied with services, the department testified that she slowly stopped attending when her pregnancy became harder to conceal. The mother confirmed

---

[1] The parental rights of any putative fathers were also terminated. The State published notice, but no one purporting to be the child's father appeared at the termination hearing. We therefore do not address any fathers on appeal.

this, admitting she did not seek prenatal care because she was actively using methamphetamine and did not want the department to know she was pregnant. The proceedings involving O.M. were resolved when the child was placed with his biological father, and the mother has no formal custody or visitation. Two months later, M.T. was born and the department became involved again.

Throughout the proceedings involving M.T., the mother was either incarcerated or in a residential treatment facility, which impacted her ability to engage in services. In October 2023, she was placed in a residential treatment facility. The mother was able to participate in more services than she had while incarcerated. She engaged in substance-use and mental-health programming and had fully supervised visits with M.T. twice per week. The program also required the mother to obtain employment and housing and spend considerable time in the community. While she was originally scheduled to complete treatment by early March 2024, the mother had to restart the program twice for rules violations, which substantially delayed her discharge.

The department also expressed concerns about the mother's boyfriend based on its own prior history with him and because he had similar substance-use issues leading to previous terminations. He was initially considered a putative father for M.T. and the department offered him services, but he was not interested. After paternity testing revealed that he was not M.T.'s biological father, the department no longer attempted to engage him in services. But the department testified that the paternity test did not alleviate its concerns because he and the mother were still in a relationship.

In December 2023, the State petitioned for termination of the mother's parental rights.[2]  The termination hearing did not occur until May 2024 to provide notice by publication to any putative fathers.  While the guardian ad litem acknowledged the mother was "objectively doing better than she has in years," he still recommended termination because the mother had not had any meaningful period of sobriety outside of a treatment setting.  By the time of the hearing, M.T. was one year old and had not been in his mother's care since he was four days old.  While the mother and M.T. had regular visits, the mother did not graduate from fully supervised to unsupervised visits and missed three of the last four visits.  The mother was also still completing treatment, with an anticipated discharge date approximately four days after the termination hearing.  The department testified the mother had not fully addressed the concerns leading to adjudication and was not prepared for M.T. to return to her custody.

But the mother had also made progress.  She maintained her sobriety and a full-time job for ten months, albeit while in an institution.  The mother completed substance-use treatment and engaged in mental-health services as part of her treatment program.  She also secured a sober-living apartment suitable for M.T.'s needs and outfitted it, including a crib, bottles, diapers, and other essentials.  She planned to move in four days after the termination hearing, when she was discharged from treatment.

---

[2] The State later amended its petition, adding additional statutory grounds for termination and addressing the parental rights of any putative fathers.

After the hearing, the juvenile court terminated the mother's rights to M.T. She appeals, contending the State failed to prove the statutory grounds for termination and requesting more time.

## II.    Review.

Our review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

## III.    Discussion.

Iowa courts use a three-step analysis to review termination of parental rights, including whether (1) grounds for termination have been established, (2) termination is in the best interests of the child, and (3) we should exercise any permissive exceptions to termination. *Id.* at 472–73. But our primary concern is always the best interests of the child. *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). The mother only challenges one of the three: whether the State adequately proved the grounds for termination. She also asks for additional time to work towards reunification.

### A. Statutory Grounds for Termination.

The juvenile court terminated the mother's parental rights to M.T. under Iowa Code section 232.116(1)(g) and (h). The court may terminate under section 232.116(1)(g) if it finds:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has

entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The mother challenges only the juvenile court's findings that that she has not responded to services and additional time will not make a difference. *See* Iowa Code § 232.116(1)(g)(3)–(4). The court may terminate under section 232.116(1)(h) if it finds:

(1) The child is three years of age or younger.
(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother challenges only the fourth element: whether the child could be returned to her custody. *See id.* § 232.116(1)(h)(4).

While the mother claims that M.T. could be returned to her custody, this is incorrect. The mother had not been discharged from treatment, and the department testified children cannot be placed at the facility. While she was only four days from her scheduled discharge date, when determining whether statutory grounds have been met, our focus is on "the time of the termination hearing." *In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) (interpreting section 232.116(1) language to mean the time of the termination hearing). On this basis alone, we may affirm under section 232.116(1)(h) without addressing the other ground. *Id.*

(permitting the court to affirm on any ground supported by the record). But we further note that her housing was not the only concern.

The mother has a lengthy history of substance use and failing to substantially comply with services. She also has not fully addressed the concerns that initiated these proceedings in the first place. *See* Iowa Code § 232.116(1)(g)(3) (considering whether the parent is able to respond to services offered); *see also J.H.*, 952 N.W.2d at 167 (considering the parent's "history of inadequate parenting" as part of section 232.116(1)(g) analysis). While she had accomplished ten months of sobriety, the mother had not proved that she was able to maintain this progress outside of treatment. She also had not been consistent with visits, particularly those occurring just before the termination hearing, nor had she graduated from fully supervised to unsupervised visits. The department testified that while the mother recently started bringing essentials for M.T., she still required "prompts" from the provider; it was not prepared to move to even semi-supervised visits until she was able to independently care for M.T.'s basic needs. "Without this necessary progression [to unsupervised visits]," we are not convinced that the mother is able to care for M.T. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020). Based on the mother's lack of progress in her previous termination cases and her history of instability, we are not convinced that she is able to adequately care for M.T. in the future. *See J.H.*, 952 N.W.2d at 171 (considering "the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future" (citation omitted)); *see also* Iowa Code § 232.116(1)(g)(4). Accordingly, we affirm on both statutory grounds.

*B. Extension of Time.*

The mother also contends the court should have granted her a six-month extension. *See* Iowa Code § 232.104(2)(b) (permitting the juvenile court to grant an extension to work toward reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). She cites her recent progress and sobriety as reasons for the extension, particularly when compared to her previous attempts in treatment.

But the juvenile court found that a six-month extension would not change the outcome, and we agree. While we commend the mother's progress, it comes too late. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." (citation omitted)). For the reasons stated previously, we are not convinced an additional six months will make a difference. Even more importantly, M.T. has already waited a substantial portion of his short life for his mother to learn to care for him. "[W]e cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 324 (citation omitted). Accordingly, we find that a six-month extension is not appropriate.

## IV.    Disposition.

Having found the statutory grounds satisfied and no extension is warranted, we affirm termination of the mother's parental rights to M.T.

**AFFIRMED.**